UNITED STATES of America,
Appellee,

v.

Samuel NESS, Defendant–Appellant.

Docket No. 05–4401–cr.

United States Court of Appeals,
Second Circuit.

Argued: April 11, 2006.

Decided: Oct. 10, 2006.

**3.** *Penn Traffic I,* 322 B.R. at 68.

Jocelyn E. Strauber, Assistant United States Attorney (Michael J. Garcia, United States Attorney, and Karl Metzner, Assistant United States Attorney, on the brief), United States Attorney's Office for the Southern District of New York, New York, N.Y., for Appellee.

Vivian Shevitz (Jane Simkin Smith, of counsel), for Defendant–Appellant.

Before WINTER, CALABRESI, and POOLER, Circuit Judges.

CALABRESI, Circuit Judge.

Defendant–Appellant Samuel Ness was convicted, after a jury trial, of one count of conspiring to commit three money laundering offenses and one substantive count of violating 18 U.S.C. § 1956(a)(1)(B)(i) ("transaction money laundering"). The three objects of the conspiracy charged were violations of (1) 18 U.S.C. § 1957(a) ("monetary transaction in unlawful funds"), (2) 18 U.S.C. § 1956(a)(1)(B)(i), and (3) 18 U.S.C. § 1956(a)(2)(B)(i) ("transportation money laundering"). Following denial of Ness's post-verdict judgment for acquittal, *see United States of America v. Ness*, 2003 WL 21804973 (S.D.N.Y. Aug.6, 2003), he was sentenced to fifteen years' imprisonment, with three years' supervised release. On appeal, Ness raises a number of challenges to his conviction and to his sentence.

We assume the parties' familiarity with the facts, the procedural history, and the issues on review.

■ Ness argues, *inter alia*, that the evidence presented at trial was insufficient to sustain his conviction with the respect to the element of "concealment," which is applicable both to transaction money laundering and transportation money laundering. Specifically, the statutes proscribe certain "financial transaction[s]" (in the case of 18 U.S.C. § 1956(a)(1)(B)(i)) and the "transportation, transmission, or transfer" of certain funds (in the case of 18 U.S.C. § 1956(a)(2)(B)(i)) "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." Here, the evidence showed that Ness, who ran an armored car carrier business, received

from drug traffickers millions of dollars in narcotics proceeds, which—the government argued—Ness and his associates transported abroad and delivered at the traffickers' behest. Ness does not dispute that such evidence was presented. Rather, he argues that the concealment element is satisfied only when the transaction or transportation at issue was designed to give unlawful proceeds the appearance of legitimate wealth. Here, he argues, the government showed only that he accepted cash from drug transactions for shipment from one place to another, *e.g.*, from drug sellers to their suppliers.

Some other circuits that have decided money laundering appeals would find this evidence legally insufficient because they have essentially adopted Ness's reasoning. *See United States v. Cuellar*, 441 F.3d 329 (5th Cir.2006), *reh'g en banc granted*, 454 F.3d 505; *United States v. Dimeck*, 24 F.3d 1239 (10th Cir.1994); *but cf. United States v. Carr*, 25 F.3d 1194, 1206 (3d Cir.1994). But we interpret the provisions against the backdrop of Second Circuit precedent, most notably *United States v. Gotti*, 459 F.3d 296 (2d Cir.2006). In that case, a panel of this court upheld convictions under 18 U.S.C. § 1956(a)(1)(B)(i) against a sufficiency challenge with respect to concealment where the evidence showed that defendants participated in a system of "tribute" payments from lower to higher figures in an organized crime hierarchy, with the proceeds deriving from unlawful activity. *Gotti*, 459 F.3d at 308–311, 337–338. In the view of the *Gotti* panel, the

"highly complex and surreptitious" process through which the funds were transferred—involving coded language, the use of intermediaries, secretive handoffs, and cash transactions—sufficed to permit the inference that the deliveries "had been designed in a way that would conceal the source of the moneys." *Id.* at 337; *see also id.* at 337–38 (citing approvingly to *United States v. Prince*, 214 F.3d 740, 752 (6th Cir.2000), and *United States v. Cruzado–Laureano*, 404 F.3d 470, 483 (1st Cir. 2005), for similar approaches to concealment).

■ We conclude that *Gotti* controls here.[1] Ample evidence was presented to permit a jury to find that Ness received narcotics proceeds and remitted them to other figures connected to the different drug operations with which he was involved. And the level of secrecy that attended Ness's dealings with the traffickers was comparable to that noted in *Gotti*, involving, for instance, clandestine meetings to transfer large sums of concealed cash, the use of coded language, and the scrupulous avoidance of a paper trail. *See, Ness*, 2003 WL 21804973, at * 1–4. On such facts, we hold that a jury could find that the acts of which Ness is accused were designed, at least in part, to conceal the identity of the funds. In so holding, however, we express no view as to sufficiency issues that might arise when the remittance of unlawful funds is surrounded by less elaborate stratagems or a lesser measure of secrecy. We note also that not every disposition of unlawful funds quali-

---

**1.** Although *Gotti's* discussion of concealment concerned only an 18 U.S.C. § 1956(a)(1)(B)(i) prosecution for transaction money laundering, we believe that it controls also with respect to Ness's prosecution under 18 U.S.C. § 1956(a)(2)(B)(i). As indicated above, the relevant concealment language is identical for both provisions. We follow the general rule that the use of identical language in different provisions of a statute is a strong indication that they are to be given the same interpretation, absent clear evidence that Congress intended otherwise. *See Sompo Japan Ins. Co. of Am. v. Union Pac. R.R.*, 456 F.3d 54, 65 (2d Cir.2006). And Ness has offered no reason why the two provisions should be interpreted differently.

fies as a money laundering offense. In *United States v. Stephenson*, 183 F.3d 110 (2d Cir.1999), we held that the defendant's use of unlawful funds to purchase a car was insufficient as a matter of law to support a conviction under 18 U.S.C. § 1956(a)(1)(B)(i), and said that " '[c]onceal' implies conduct entailing deception that goes beyond merely acting in a way that avoids compulsory disclosure." *Id.* at 121.

■ In their briefs, the parties also devote considerable attention to Ness's sufficiency of the evidence challenge the regarding jury's finding that he or his business was a "financial institution". But given our rejection of Ness's sufficiency challenge on the "concealment" issue, we may resolve Ness's appeal without taking up the financial institution sufficiency question. Of the offenses charged, either in the substantive or the conspiracy count, the involvement of a financial institution is strictly necessary only to 18 U.S.C. § 1957(a), Object One of the conspiracy count.[2] The jury indicated by special verdict that Ness conspired to achieve all three charged objects of the conspiracy. In such a situation, as when a jury issues a general verdict on a conspiracy charge naming multiple objects in the conjunctive, "the lack of sufficient evidence to support one of the objects of a multi-object conspiracy d[oes] not vitiate the conspiracy conviction, where there was sufficient evidence to support [an]other object." *United States v. Pascarella*, 84 F.3d 61,

71 (2d Cir.1996) (citing *Griffin v. United States*, 502 U.S. 46, 60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)). Hence, even if Ness's armored car company did not qualify as a financial institution, and his conspiracy conviction thus could not stand with respect to Object One, the conviction could still be sustained on the basis of Objects Two and Three.[3] Accordingly, we may proceed without addressing this sufficiency challenge.

■ We do, however, consider—and reject—a second, related claim: that the jury instruction with respect to the financial institution element was flawed, and caused Ness prejudice. As Ness failed to object to the charge below, our review is for plain error. *United States v. Miller*, 116 F.3d 641, 672 (2d Cir.1997). In fact, the "financial institution" jury charge proposed by the prosecution and adopted by the court was inaccurate, as the government now all but admits. But Ness is unable to demonstrate that the error caused him prejudice. As discussed above, Ness's conspiracy conviction could be sustained on the basis of its third object alone, which does not have "financial institution" as an element, so the relevant count for purposes of this challenge is the substantive count of transaction money laundering. The conduct that would qualify Ness or his business as a "financial institution" under the faulty jury charge would also satisfy the definition of a "financial transaction" in 18 U.S.C. § 1956(c)(4)(A), which forms an alternate basis for conviction. *See Gotti*, 459 F.3d at 335–36 (interpreting

---

2. Under the disjunctive structure of 18 U.S.C. § 1956(a)(1)(B)(i), a financial institution may—but need not—be an element of transaction money laundering, and in defining transportation money laundering, 18 U.S.C. § 1956(a)(2)(B)(i) makes no reference whatsoever to financial institutions.

3. Nor do we believe that Ness's sentence would require reconsideration even if we found the evidence insufficient with respect to the financial institution element. By our calculation, the existence *vel non* of a financial institution would not affect the applicable range under the Sentencing Guidelines, nor was it relevant to the factors mentioned by Judge Hellerstein in setting Ness's sentence.

18 U.S.C. § 1956(c)(4)(A)). Hence, even if the jury relied on the faulty jury charge, it still found facts sufficient to sustain the conviction.

We have considered each of Ness's claims, and we find them all to be without merit. Accordingly, we affirm the judgment of the district court.