**05-4401-cr**
**USA v. Ness**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2005

(Argued: April 11, 2006                    Decided: May 8, 2009)

Docket No. 05-4401-cr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

             Appellee,

                  v.

SAMUEL NESS,

             Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, CALABRESI, and POOLER, Circuit Judges.

On remand from the United States Supreme Court after it vacated our prior ruling in light of Regalado Cuellar v. United States, 128 S. Ct. 1994 (2008). We hold that a reasonable jury could not find beyond a reasonable doubt that the purpose of defendant's transportation of narcotics proceeds was to conceal their nature, location, source, ownership, or control for purposes of satisfying 18 U.S.C. § 1956(a)(1)(B)(i) and 18 U.S.C. § 1956(a)(2)(B)(i). We further hold that the government has failed to prove that a "financial institution" was involved in order to satisfy 18 U.S.C. § 1957(a). We therefore reverse.

1

VIVIAN SHEVITZ (Jane Simkin Smith, of counsel), South Salem, New York, for Appellant.

JOCELYN E. STRAUBER, Assistant United States Attorney (Michael J. Garcia, United States Attorney, on the brief, Karl Metzner, Assistant United States Attorney, of counsel), United States Attorney's Office for the Southern District of New York, New York, New York, for Appellee.

WINTER, Circuit Judge:

Samuel Ness was convicted, after a jury trial, of one count of conspiring to commit three money laundering offenses and one substantive count of violating 18 U.S.C. § 1956(a)(1)(B)(i). On appeal, Ness argued that the evidence against him was legally insufficient because the applicable statutes' concealment element had not been met. See United States v. Ness, 466 F.3d 79, 80 (2d Cir. 2006). We affirmed the convictions, concluding that a reasonable jury could find that Ness's actions were designed, at least in part, to conceal the identity of the proceeds. Id. at 81, 82. On June 9, 2008, the United States Supreme Court vacated our decision and remanded for further consideration in light of Regalado Cuellar v. United States, 128 S. Ct. 1994 (2008). See Ness v. United States, 128 S. Ct. 2900 (2008) (mem.). Cuellar held that the concealment element of the charged crimes requires a showing that the purpose of the transportation was to conceal or disguise a listed attribute of the proceeds. Cuellar, 128 S.

2

Ct. at 2005.  In light of <u>Cuellar</u>, we now reverse.

BACKGROUND

A jury convicted Ness of one count of conspiring to commit three money laundering offenses and one substantive count of violating 18 U.S.C. § 1956(a)(1)(B)(i) ("transaction money laundering").  The three objects of the charged conspiracy were violations of:  (1) 18 U.S.C. § 1957(a) ("monetary transaction in unlawful funds"); (2) 18 U.S.C. § 1956(a)(1)(B)(i); and (3) 18 U.S.C. § 1956(a)(2)(B)(i) ("transportation money laundering").  Following denial of his post-verdict motion for a judgment of acquittal, <u>see</u> <u>United States v. Ness</u>, No. 01-cr-699, 2003 WL 21804973 (S.D.N.Y. Aug. 6, 2003), Ness was sentenced to fifteen years' imprisonment, with three years' supervised release.

On appeal, Ness argued, <u>inter</u> <u>alia</u>, that the evidence presented at trial was insufficient to sustain his conviction with respect to the element of concealment, which included both a transaction money laundering statute and transportation money laundering statute.  Specifically, these statutes proscribe certain "financial transaction[s]" (in the case of 18 U.S.C. § 1956(a)(1)(B)(i)) and the "transportation, transmission, or transfer" of certain funds (in the case of 18 U.S.C. § 1956(a)(2)(B)(i)) that are "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful

3

activity." The evidence showed that Ness, who ran an armored car carrier business, received millions of dollars in narcotics proceeds from drug traffickers, which the government argued Ness and his associates transported to destinations abroad at the traffickers' behest. Ness contended that the concealment element of the transaction and transportation money laundering statutes could be satisfied only when the transaction or transportation at issue was designed to cloak the unlawful proceeds with the appearance of legitimate wealth. He maintained that the government showed only that he received cash from drug transactions for shipment from one place to another and failed to show that such actions were designed to give the appearance of legitimate wealth.

We rejected Ness's arguments in light of our decision in United States v. Gotti, 459 F.3d 296 (2d Cir. 2006). See United States v. Ness, 466 F.3d 79, 81 (2d Cir. 2006) ("Ness I"). In Gotti, we had upheld convictions under 18 U.S.C. § 1956(a)(1)(B)(i) against a sufficiency challenge with respect to concealment where the evidence showed that defendants participated in a system of "tribute" payments from lower to higher figures in an organized crime hierarchy, with the proceeds deriving from unlawful activity. Id. at 308-11, 337-38. We noted that the "highly complex and surreptitious" process through which the funds were transferred – involving coded language, the

4

use of intermediaries, secretive handoffs, and cash transactions – sufficed to permit the inference that the deliveries "had been designed in a way that would conceal the source of the moneys." Id. at 337 (footnote reference omitted).

In Ness I, we held that the level of secrecy that attended Ness's dealings with the traffickers was comparable to that noted in Gotti, involving, for example, clandestine meetings to transfer large sums of concealed cash, the use of coded language, and the scrupulous avoidance of a paper trail. See 466 F.3d at 81. With respect to the 18 U.S.C. § 1957(a) offense, we declined to address Ness's sufficiency challenge because his conviction and sentence would still stand on the basis of the transaction and transportation money laundering convictions. See id. at 82.

On June 9, 2008, the United States Supreme Court vacated Ness I and remanded for further consideration in light of Regalado Cuellar v. United States, 128 S. Ct. 1994 (2008). See Ness v. United States, 128 S. Ct. 2900 (2008) (mem.).

DISCUSSION

a) Money Laundering

In Cuellar, the defendant had been convicted of international money laundering under 18 U.S.C. § 1956(a)(2)(B)(i) after police officers found $81,000 in narcotics proceeds during a search of his car. See id. at 1998. The Fifth Circuit reversed the conviction after concluding that the evidence failed

to show that the purpose of the transportation was to conceal or disguise unlawful proceeds and create the appearance of legitimate wealth. See id. at 1998-99. The Fifth Circuit granted rehearing en banc and affirmed the conviction. See id. at 1999. The court rejected Cuellar's argument that the government must prove that he attempted to create the appearance of legitimate wealth. It held rather that Cuellar's extensive efforts to prevent detection of the funds during transportation showed that he sought to conceal or disguise the nature, location, and source, ownership, or control of the funds. See id. On certiorari, the Supreme Court rejected an interpretation of the statute that would require the government to prove that the defendant attempted to create the appearance of legitimate wealth. See id. at 2000. However, the Court concluded that the statute required evidence that the defendant's purpose (in whole or in part) in transporting the funds was to conceal the nature, location, source, ownership, or control of the funds. Id. at 2005.

Therefore, a conviction under Section 1956(a)(2)(B)(i) must be based on evidence that the defendant: (i) attempted to transport the funds across the United States border; (ii) knew that those funds "represent[ed] the proceeds of some form of unlawful activity;" and (iii) knew that such transportation was designed to "conceal or disguise the nature, the location, the

source, the ownership, or the control" of the funds.  See id. at 2002.  With respect to this third prong, the Court held that a showing that the defendant hid funds during transportation is not sufficient to support a conviction under the statute, even if substantial efforts have been expended to conceal the money.  See id. at 2003.  Rather, the Court, looking to the meaning of "design" in the phrase "knowing that such transportation is designed . . . to conceal or disguise," concluded that because "design" means purpose or plan in this context, a conviction "requires proof that the purpose -- not merely effect -- of the transportation was to conceal or disguise a listed attribute" of the transported funds.  Id. at 2003, 2005.  As the Court explained, "[t]here is a difference between concealing something to transport it, and transporting something to conceal it; that is, how one moves the money is distinct from why one moves the money," and "[e]vidence of the former, standing alone, is not sufficient to prove the latter."  Id. at 2005 (internal quotation marks and citation omitted).

We turn now to the application of Cuellar to the present matter.  Ordinarily, we might remand this issue to the district court to benefit from its views.  That is unnecessary, however, because, subsequent to the Cuellar decision, the district court stated its views in considering Ness's renewed motion for bail.  See United States v. Ness, No. 01-cr-699, 2008 WL 3842961

7

(S.D.N.Y. Aug. 15, 2008). The district court concluded that the government had provided sufficient evidence to sustain a conviction. See id. at *5. The court relied upon evidence that the proceeds of the drug sales were being transported to people in Europe and commingled with jewelry and other valuables that Ness declared to be part of his business of transporting such valuables internationally. See id. The court concluded that "[t]he transportation was designed to conceal or disguise the 'nature' of that which was being transported, or its 'location' among the valuables that Ness was allowed to transport and move from one airplane to another at JFK airport, or that the 'source' of the items being transported was ecstasy distributions." Id.

The government echoes this reasoning on the remand. It contends that the evidence adduced at trial established two purposes behind Ness's transportation of the narcotics proceeds: "(1) to ensure the concealment of the funds (including concealment of their nature, location, source, ownership and control); and (2) to allow the transportation of the funds to other narcotics traffickers." The government argues that Ness's actions show that the drug proceeds were delivered to his company at least in part for purposes of concealment, pointing to "[his] scrupulous avoidance of any paper trail, his surreptitious shipment of the money by hiding it in packages of jewelry for shipment, and his use of code words for delivery of the funds."

8

The government also notes certain testimony it construes as pertinent:  (i) the testimony of Ness's business partner Robert David that Ness stated that he "sells confidentiality"; and (ii) ecstasy trafficker Guy Madmon's testimony that he "didn't want a paper trail saying anything about any money that [he] dropped off," which the government contends "supports the jury's conclusion that one reason drug money was delivered to Ness's company was because Ness would conceal its nature, location, source, ownership, and control by failing to document its receipt or existence."

We disagree.  While such evidence may indicate that Ness was concealing the nature, location, or source of the narcotics proceeds, it does not prove that his purpose in transporting the proceeds was to conceal these attributes.  It evidences not "why" he moved the money, but only "how" he moved it.  Ness's avoidance of a paper trail, hiding of the proceeds in packages of jewelry, and use of code words show only that he concealed the proceeds in order to transport them.  Under Cuellar, such evidence is not sufficient to prove transaction or transportation money laundering offenses.  The testimony of David and Madmon, while slightly more suggestive that the purpose of Ness's business was to conceal illegal proceeds, is not sufficient to support a finding beyond a reasonable doubt that Ness's purpose in transporting the narcotics proceeds was to conceal one or more of

9

their attributes.

We have reviewed the remaining evidence and conclude that it shows only an intent to conceal the transportation, not an intent to transport in order to conceal. Therefore, the transaction and transportation money laundering convictions must be overturned.

b) <u>Monetary Transaction in Unlawful Funds</u>

Because we upheld the transaction and transportation money laundering convictions in <u>Ness I</u>, we did not address Ness's sufficiency challenge to his 18 U.S.C. § 1957(a) conviction. Because these other convictions are now overturned, however, we consider this issue. We conclude that this conviction must be overturned as well.

To prove a violation of § 1957(a), the government must present evidence that the defendant knowingly engaged or attempted to engage in a monetary transaction in unlawful funds. The statute defines "monetary transaction" as "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution (as defined in section 1956 of this title) . . . ."[1] 18 U.S.C. § 1957(f) (emphasis added). Thus, in order to sustain a § 1957(a) conviction, a financial institution must have been involved. In <u>Ness I</u>, we

---

[1]The government does not claim that Ness was transferring funds "to" a financial institution. Therefore, we only need address whether Ness or his armored car company were financial institutions.

10

concluded that the district court's instruction to the jury with respect to the financial institution element was inaccurate, but held that Ness failed to demonstrate prejudice given that his conspiracy conviction would nonetheless stand under the transaction money laundering offense that did not include "financial institution" as an element. See 466 F.3d at 82. We now conclude that the evidence concerning the involvement of a financial institution was legally insufficient even if the instruction was correct.

Section 1956 defines "financial institution" as including (1) any financial institution, as defined under 31 U.S.C. § 5312(a)(2), or the regulations promulgated thereunder; and (2) any foreign bank, as defined under 12 U.S.C. § 3101. See 18 U.S.C. § 1956(c)(6). Section 5312 of Title 31 of the United States Code defines "financial institution" by enumerating twenty-six types of institutions, including, inter alia, a commercial bank, a private banker, and a currency exchange.[2] See

_____

[2] At the time of Ness's arrest in July 2001, the twenty-six types of financial institutions listed in 31 U.S.C. § 5312(a)(2) were as follows: (A) an insured bank; (B) a commercial bank or trust company; (C) a private banker; (D) an agency or branch of a foreign bank in the United States; (E) an insured institution; (F) a thrift institution; (G) a broker or dealer registered with the Securities and Exchange Commission under the Securities Exchange Act of 1934; (H) a broker or dealer in securities or commodities; (I) an investment banker or investment company; (J) a currency exchange; (K) an issuer, redeemer, or cashier of travelers' checks, checks, money orders, or similar instruments; (L) an operator of a credit card system; (M) an insurance company; (N) a dealer in precious metals, stones, or jewels; (O) a pawnbroker; (P) a loan or finance company; (Q) a travel agency; (R) a licensed sender of money; (S) a telegraph company; (T) a business engaged in vehicle sales; (U) persons involved in real estate closings and settlements; (V) the United States Postal Service; (W) an agency of the United States Government or of a State or local government carrying out a duty or power of a business enumerated here; (X) certain casinos, gambling casinos, or gaming establishments with an annual gaming revenue of more than $1,000,000; (Y) any business or agency which engages in any activity which

11

31 U.S.C. § 5312(a)(2).  The government has not argued that either Ness or his armored car company constitutes one or more of the enumerated types of institutions in Section 5312(a)(2). Therefore, we need not address whether Ness or his company qualify as a financial institution under this statute.

The government rather rests its theory of liability on a definition of "financial institution" contained in a regulation promulgated under Section 5312.  Turning to Section 1956(c)(6)'s definition of "financial institution," which in turn looks to the meaning of "financial institution" under Section 5312(a)(2) and the regulations promulgated thereunder, the government relies upon Section 103.11 of Title 31 of the Code of Federal Regulations, which was promulgated under Section 5312.  Section 103.11 defines "financial institution" as, <u>inter</u> <u>alia</u>, a "money services business."  31 C.F.R. § 103.11(n)(3).  The regulation defines "money services business" to include a person doing business as a "money transmitter," which in turn is defined, <u>inter</u> <u>alia</u>, as any "person engaged as a business in the transfer of funds."  31 C.F.R. § 103.11(uu)(5)(i)(B).  Pointing to Ness's involvement in transporting the narcotics proceeds, the government contends that there was overwhelming evidence that Ness was a "person engaged as a business in the transfer of

---

the Secretary of the Treasury determines, by regulation, to be an activity similar to, related to, or a substitute for any activity in which any business enumerated here is authorized to engage; or (Z) any other business designated by the Secretary whose cash transactions have a high degree of usefulness in criminal, tax, or regulatory matters.

funds," and was, therefore, a "financial institution."

This theory was not presented to the jury and therefore cannot support an affirmance. See Chiarella v. United States, 445 U.S. 222, 236 (1980); United States v. Plaza Health Labs., Inc., 3 F.3d 643, 646 (2d Cir. 1993). Even if it had been presented, Ness is, as matter of law, not a "person engaged as a business in the transfer of funds." Section 103.11 defines "funds transfer" as a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." 31 C.F.R. § 103.11(q). "Payment order," in turn, is defined as

> [a]n instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank or foreign bank to pay, a fixed or determinable amount of money to a beneficiary if: (1) The instruction does not state a condition to payment to the beneficiary other than time of payment; (2) The receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from, the sender; and (3) The instruction is transmitted by the sender directly to the receiving bank or to an agent, funds transfer system, or communication system for transmittal to the receiving bank.

31 C.F.R. § 103.11(y). The government does not claim that Ness's transactions involved any payment orders.

Moreover, "money transmitter" is, by definition, limited to certain "facts and circumstances." 31 C.F.R. § 103.11(uu)(5)(ii). The Financial Crimes Enforcement Network

13

("FinCEN") explained in its Federal Register notice that many commenters sought clarification of the definition of money transmitter and objected to any interpretation that would cause businesses that simply transmit funds as part of their other business activities to be categorized as money transmitters. See Amendment to the Bank Secrecy Act Regulations – Definitions Relating to, and Registration of, Money Services Businesses, 64 Fed. Reg. 45,438, 45,442 (Aug. 20, 1999) (to be codified at 31 C.F.R. pt. 103). FinCEN agreed that "the breadth of the definition of money transmitter proposed in the Notice requires limitation to avoid both unnecessary burden and the extension of the Bank Secrecy Act to businesses whose money transmission activities either do not involve significant intermediation or are ancillary to the completion of other transactions." Id. at 45,442-43. The government has not presented any evidence of significant intermediation here. Thus, we must overturn the 18 U.S.C. § 1957(a) conviction as well.

                              CONCLUSION

    For the reasons discussed above, we reverse Ness's convictions.