08-1621-cr
United States v. Nelson Hernan Garcia

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

—————————

August Term, 2009

(Argued: September 30, 2009                    Decided: December 1, 2009)

Docket No. 08-1621-cr

—————————

UNITED STATES OF AMERICA,

*Appellee,*

— v.—

NELSON HERNAN GARCIA,

*Defendant-Appellant.*[*]

—————————

B e f o r e:

JACOBS, *Chief Judge*, SACK, AND LYNCH, *Circuit Judges*.

_____

Appeal from the judgment of the United States District Court for the Southern

District of New York (Cote, *Judge*), sentencing defendant-appellant Nelson Hernan

---

[*] The Clerk of the Court is respectfully directed to amend the official caption to conform to the caption of this order.

Garcia principally to 108 months in prison following his guilty plea to participating in a money laundering conspiracy. Because the record lacks a sufficient factual basis to conclude that Garcia participated in any conspiracy with the requisite knowledge of the concealment element of the crime charged, as interpreted by the Supreme Court in Cuellar v. United States, 128 S. Ct. 1994 (2008), we vacate the plea and remand to the district court for further proceedings.

VACATED and REMANDED.

————————

BRENT S. WIBLE, Assistant United States Attorney (Brendan R. McGuire, Andrew L. Fish, o*f Counsel*), for Lev L. Dassin, Acting United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

JONATHAN I. EDELSTEIN, New York, New York, *for Defendant-Appellant*.

————————

GERARD E. LYNCH, *Circuit Judge*:

Defendant-Appellant Nelson Hernan Garcia appeals from the March 26, 2008 judgment of the district court sentencing him principally to 108 months in prison, following Garcia's guilty plea to participating in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h). The object of the charged conspiracy was violation of the transaction provision of the money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i). Garcia admitted that he conspired to transport ill-gotten cash proceeds across the country, that the cash was disguised during this attempted transaction, and that he knew that the

2

money would not be declared as income.  On appeal, Garcia argues that this is an insufficient factual basis on which to conclude that he knew that the transaction was designed to conceal the nature, location, source, ownership, or control of the funds involved in the transaction, and that such knowledge is a required element of the charged offense.

Following Garcia's guilty plea, the Supreme Court held in Cuellar v. United States, 128 S. Ct. 1994 (2008), that the concealment element of the money laundering statute requires that the purpose, not merely the effect, of the endeavor must be to conceal or disguise a listed attribute of the proceeds.  Id. at 2004-05.  We agree that the conduct admitted by Garcia did not provide a sufficient factual basis for finding a violation of the money laundering statute and therefore vacate Garcia's guilty plea and remand the case to the district court for further proceedings.

**BACKGROUND**

In late 2006, a drug supplier sent approximately 120 kilograms of cocaine to a man who turned out to be a government informant ("CI").  As a result of those shipments, the CI owed the cocaine supplier $2.2 million.  Defendant Garcia was a truck driver tasked with retrieving this money from the CI on the east coast and transporting it across the country to either California or Texas.

On February 7, 2007, Garcia called the CI in the Bronx, and the two arranged to meet at Exit 7 on the New Jersey Turnpike for the CI to transfer the funds to Garcia.

3

Having detected police presence in the designated meeting area, Garcia altered the plan, and the meeting was moved to the parking lot of an abandoned diner in Levittown, Pennsylvania. When the CI arrived at the diner parking lot, he encountered Garcia and another man waiting in a tractor-trailer. The CI gave the men two duffle bags filled with sham United States currency, vacuum sealed and wrapped in clear plastic. After receiving the bags, Garcia and the other man drove away in the trailer. They were apprehended by federal agents shortly thereafter.

A federal grand jury indicted Garcia on one count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h), the object of the conspiracy being to "conduct a financial transaction" with property "represent[ing] the proceeds of some form of unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" in violation of 18 U.S.C § 1956(a)(1)(B)(i). On August 24, 2007, Garcia pled guilty to the money laundering conspiracy charge. During the plea colloquy, the district judge described the elements of the money laundering conspiracy charge, and explained that the indictment charged that Garcia had conspired with others to transfer and deliver a large amount of cash proceeds from unlawful activity, knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds. The judge specifically described the allegation that as an overt act in furtherance of the

4

conspiracy, Garcia in February 2007 collected what he believed to be $2.2 million in cash from a person in Pennsylvania.

The judge asked Garcia to state what he did that made him think he was guilty of the charged offense. Garcia responded that he "went to get some money," which he believed was the proceeds of some illegal activity, but that he did not know that it was drug proceeds or how much money was involved. (A. 45.) The judge probed whether Garcia understood "that picking up the cash on that occasion would help disguise the source of that illegal money." (Id.) Garcia asked the judge to repeat the question, whereupon the judge reiterated that the money laundering conspiracy charge involves an agreement to engage in the transfer or delivery of cash with the intent to conceal or disguise the nature, location, source, ownership or control of the proceeds of some specified unlawful activity. The judge then asked whether Garcia understood "that going to Pennsylvania on that occasion to pick up that cash was in fact part of a larger scheme to conceal or disguise the source or ownership of those funds?" (Id.) Garcia responded "no." (Id.)

At that point, the district judge asked defense counsel to assist with the colloquy. Defense counsel stated that

> Mr. Garcia's role was that he was contacted by an individual
> that is now known to the government – and I don't want to
> mention it on the record for obvious reasons – called Mr.
> Garcia and he agreed to and picked up monies. He didn't

know the amount that was wrapped up and packaged to be looked [*sic*] like regular truck cargo that he was supposed to deliver back to an individual. And he knew that those funds were the proceeds of illegal activity, not specifically drug proceeds, but he knew that it was. So concealment of the funds was to be included with the regular shipment of cargo within a truck, taken from point A to point B, not to be declared or a part of any income and taken to an individual, not locally but somewhere back in California, or Texas.

(Id. 46-47.) Garcia acknowledged that counsel's recitation of Garcia's involvement was accurate. The judge then confirmed that Garcia understood that the packages of money were wrapped so as to conceal their contents. After both the government and defense counsel agreed that this was a sufficient factual predicate, the judge accepted Garcia's guilty plea.

Prior to sentencing, the district court conducted a hearing pursuant to United States v. Fatico, 579 F.2d 707 (2d Cir. 1978), to resolve the contested factual issue of whether Garcia knew or believed that the funds at issue were narcotics proceeds, so as to trigger a six-level enhancement under Section 2S1.1(b)(1) of the Sentencing Guidelines. Two witnesses testified at the hearing, both for the government: a certified translator who authenticated two recordings of conversations between Garcia and the CI that were introduced as exhibits, and the CI. The CI testified to the sequence of events concerning the underlying conduct described above. At the conclusion of the hearing, the court found that a preponderance of the evidence established that Garcia knew that he was transporting narcotics proceeds.

6

On March 14, 2008, Garcia's counsel wrote to the district court requesting an adjournment of Garcia's sentencing pending the Supreme Court's anticipated decision in Cuellar v. United States, 552 U.S. 973 (2007) (granting certiorari), which counsel described as concerning whether hiding funds with no design to create the appearance of legitimate wealth is sufficient to support a money laundering conviction. Counsel stated that he believed that the facts of Cuellar were similar to Garcia's case. The district court denied the request, and on March 26, 2008, sentenced Garcia to 108 months in prison, to be followed by 3 years of supervised release, and a $100 special assessment.

Cuellar was decided on June 2, 2008. As discussed in more detail below, Cuellar rejected the "appearance of legitimate wealth" requirement, but held that the concealment element of the money laundering statute is satisfied only where the purpose, not merely the effect, of the transportation of funds is to conceal or disguise a listed attribute of the money. Cuellar, 128 S. Ct. at 2000-01, 2004-05. On appeal, Garcia contends that his plea to a money laundering conspiracy lacked a sufficient factual basis under Cuellar and must be vacated. Alternatively, Garcia attacks the length of his sentence on a number of grounds.

**DISCUSSION**

**I.      Legal Standards**

A.      Rule 11

Rule 11 of the Federal Rules of Criminal Procedure requires that the district court,

"[b]efore entering judgment on a guilty plea, . . . determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). In making that determination, the court is not limited to an examination of the defendant's plea allocution, but may look more broadly to "any facts on the record at the time of the plea proceeding." United States v. Adams, 448 F.3d 492, 499 (2d Cir. 2006), citing Irizarry v. United States, 508 F.2d 960, 967 (2d Cir. 1974). The overarching requirement is that the court "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." United States v. Maher, 108 F.3d 1513, 1524 (2d Cir. 1997). "'Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.''" Id., quoting McCarthy v. United States, 394 U.S. 459, 467 (1969), in turn quoting Fed. R. Crim. P. 11 advisory committee's note.[1]

B.    Plain Error

Because Garcia did not challenge the sufficiency of his guilty plea before the district court, our review is for plain error. United States v. Vonn, 535 U.S. 55, 58-59

---

[1] "Fed. R. Crim. P. 11 has undergone substantial revisions since McCarthy was decided[;] however, the McCarthy rationale remains viable for substantiating the requirement of a sufficient factual basis for a plea." Adams, 448 F.3d at 500 n.3 (internal citations omitted).

8

(2002).[2] Under the plain error standard of Federal Rule of Criminal Procedure 52(b), "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" Olano, 507 U.S. at 732 (second alteration in original), quoting Fed. R. Crim. P. 52(b); accord, United States v. Gamez, 577 F.3d 394, 397 (2d Cir. 2009) (per curiam). "Moreover, courts of appeals should only exercise their discretion to correct the forfeited error pursuant to Fed. R. Crim. P. 52(b) when the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Gamez, 577 F.3d at 397 (internal punctuation marks omitted), quoting Olano, 507 U.S. at 732. "In the context of a Rule 11 violation, to show plain error, a defendant must establish that the violation affected substantial rights and that there is a 'reasonable probability that, but for the error, he would not have entered the plea.'" United States v. Vaval, 404 F.3d 144, 151 (2d Cir. 2005), quoting United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004). "In assessing the likely effect of a Rule 11 error, we are to examine the entire record." United States v. Torrellas, 455 F.3d 96, 103 (2d Cir. 2006).

---

[2] We reject Garcia's contention that harmless, rather than plain, error review applies here. Although Garcia asked the district court to delay sentencing until Cuellar had been decided, at no point in the district court proceedings did he seek to withdraw the plea, or otherwise indicate a belief that the facts to which he allocuted do not satisfy the statutory requirements of the crime charged. Accordingly, he has forfeited this error by "fail[ing] to make the timely assertion of [the] right," and plain error review is appropriate. United States v. Olano, 507 U.S. 725, 733 (1993); cf. United States v. Hardwick, 523 F.3d 94, 98 (2d Cir. 2008) ("Although defense counsel made a general objection to the reading of Stacey's allocution (and asked for a limiting instruction, which was given), she did not mention the Confrontation Clause, the Sixth Amendment, or any Confrontation Clause caselaw in her objection. The objection failed to put the trial court on notice that Confrontation Clause concerns were implicated; thus, harmless error review is inappropriate, and we review the constitutional issue for plain error." (internal punctuation marks omitted)).

C.    Money Laundering Conspiracy

Conspiring to launder money requires that two or more people agree to violate the federal money laundering statute, and that the defendant "knowingly engaged in the conspiracy with the specific intent to commit the offenses that [are] the objects of the conspiracy." United States v. Huezo, 546 F.3d 174, 180 (2d Cir. 2008), quoting United States v. Monaco, 194 F.3d 381, 386 (2d Cir. 1999).[3]  The charged object of the conspiracy here is transaction money laundering in violation of 18 U.S.C. § 1956(A)(1)(B)(i), which prohibits certain financial transactions – including the transfer or delivery of cash – involving the proceeds of certain unlawful activities when the defendant knows "that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."  18 U.S.C. § 1956(a)(1)(B)(i).[4]  Interpreting the analogous

---

[3]   Although Huezo and Monaco stated that a money laundering conspiracy also requires an overt act in furtherance of the conspiracy, the Supreme Court held otherwise in Whitfield v. United States, 543 U.S. 209, 214 (2005).

[4]  Subsection (A)(1)(B)(i) reads, in its entirety:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.  For purposes of this paragraph, a financial transaction shall be

10

transportation provision of the money laundering statute, which prohibits the transportation of certain criminal proceeds into or out of the United States "knowing that such transportation . . . is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control" of the funds, 18 U.S.C. § 1956(a)(2)(B)(i), the Supreme Court held in <u>Cuellar</u> that the statute "requires proof that the purpose – not merely effect – of the transportation was to conceal or disguise a listed attribute" of the funds. <u>Cuellar</u>, 128 S. Ct. at 2005.

In <u>Cuellar</u>, the jury convicted Cuellar of transportation money laundering after police found approximately $81,000 in narcotics proceeds hidden in Cuellar's car as he drove towards Mexico. The money was hidden in a secret compartment of the vehicle, under the rear floorboard, bundled in plastic bags and duct tape, and covered with animal hair. <u>Id</u>. at 1998. A divided panel of the Fifth Circuit reversed the conviction, holding that the statute requires a showing that defendant attempted to create the appearance of legitimate wealth and that the evidence failed to show that defendant had intended to do so. 441 F.3d 329 (5th Cir. 2006). The Fifth Circuit granted rehearing en banc and, with three judges dissenting, affirmed the conviction. 478 F.3d 282 (5th Cir. 2007) (en banc).

---

considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.

18 U.S.C. § 1956(a)(1)(B)(i). The required "financial transaction" can be a "transfer" or "delivery" of cash, and drug trafficking is one of the statutorily specified unlawful activities. 18 U.S.C. §§ 1956(c)(3), (4), (5), & (7)(B)(i).

11

The en banc Court rejected the requirement of an intent to create a legitimate appearance of wealth, and held that Cuellar's extensive efforts to conceal the funds during transportation sufficed to show an intent to conceal or disguise a listed attribute of the funds. Id. at 289-92.

The Supreme Court reversed the conviction, rejecting the holdings of both the Fifth Circuit's panel decision and its later en banc opinion. Cuellar, 128 S. Ct. at 1997. First, the Supreme Court rejected Cuellar's argument, adopted by the Fifth Circuit panel, that the statute requires that a defendant take steps to make the funds appear legitimate. Id. at 2000-02. Then, however, the Court also rejected the government's argument, adopted by the Fifth Circuit en banc, that the statute could be violated by a defendant who simply concealed the money during transportation, holding that "merely hiding funds during transportation is not sufficient to violate the statute, even if substantial efforts have been expended to conceal the money." Id. at 2003. Rather, the Supreme Court focused on the word "design" in the statutory requirement that the transportation be "designed in whole or in part to conceal or disguise" a listed attribute of the money, and reasoned that "design" in that context must mean "purpose or plan; i.e., the intended aim of the transportation." Id.

Thus, Cuellar held that the money laundering statute requires "that the purpose – not merely effect – of the transportation [be] to conceal or disguise a listed attribute." Id. at 2005. Although hiding funds during transportation may, in certain contexts, provide circumstantial evidence that the purpose of the transportation is concealment, the

12

Supreme Court emphasized the "difference between concealing something to transport it, and transporting something to conceal it; that is, *how* one moves the money is distinct from *why* one moves the money. Evidence of the former, standing alone, is not sufficient to prove the latter." Id. at 2005 (internal citation and quotation marks omitted).

The facts of the case highlighted the distinction: Although Cuellar had clearly concealed the money to facilitate its transportation, there was no evidence that the purpose of the transportation was concealment of any sort. Id. Rather, the government's own expert witness testified that the purpose of the transportation was to compensate the leaders of the drug trafficking operation. Id. at 2005 & n.7. As the government's evidence was limited to establishing that Cuellar concealed the funds en route to Mexico, the Supreme Court reversed the conviction. Id. at 2006.

Although Cuellar arose in the context of transportation money laundering, we have found its holding equally applicable in the context of transaction money laundering, in light of the identical language used in the two provisions. Huezo, 546 F.3d at 179; see also United States v. Ness, 565 F.3d 73, 78 (2d Cir. 2009). Compare 18 U.S.C. § 1956(a)(1)(B)(i) (transaction money laundering), with 18 U.S.C. § 1956(a)(2)(B)(i) (transportation money laundering). As we have previously stated, "Cuellar confirms that a conviction for transaction money laundering, like a conviction for transportation money laundering, requires proof that the purpose or intended aim of the transaction was to conceal or disguise a specified attribute of the funds." Huezo, 546 F.3d at 179.

In Ness, we encountered a man who transported millions of dollars of narcotics

13

proceeds via his armored car carrier business by hiding the proceeds in packages of jewelry being transported to Europe, avoiding any paper trail, and using code words for the delivery of the funds. All of this, we found, "shows only an intent to conceal the transportation, not an intent to transport in order to conceal," and accordingly reversed his convictions for both transaction and transportation money laundering. Ness, 565 F.3d at 78. The distinction may sound narrow and verbal, but it goes to the heart of the very idea of money laundering, which is that the transaction itself operates in some way to conceal the nature, source or ownership or the like of the funds, and thus to "launder" the illicit proceeds.

## II.    Application

### A.    Error

Garcia argues that the transaction at issue here is a straightforward and unsophisticated payment in exchange for a past shipment of drugs, done with the purpose of compensating the leaders of the drug operation, and that because the plea was founded solely on his admission that the funds were packaged so as to hide them during transport, the plea lacks a sufficient factual basis under Cuellar and its progeny. In arguing to the contrary, the government highlights the fact that – unlike Cuellar and Ness, which arose following jury convictions – Garcia acknowledged during his plea allocution that he understood the nature of the charge, including the concealment element, and admitted to engaging in conduct in accordance thereto. While "a reading of the indictment to the defendant coupled with his admission of the acts described in it" may provide a sufficient

14

factual basis for a guilty plea where "the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal," Godwin v. United States, 687 F.2d 585, 590 (2d Cir. 1982), that principle is inapplicable here. Any argument that the charge is uncomplicated and readily understandable by the average layman is belied by the diverse interpretations ascribed to the concealment element by the various judges hearing Cuellar. Accordingly, Garcia's supposed understanding of the nature of the charge does not take the government far.

Moreover, Garcia's allocution demonstrated actual confusion about the critical concealment element of the offense. Asked what he did to violate the law, he simply replied that he "went to get . . . money" that he knew was the proceeds of crime, omitting any reference to a concealment scheme. (A. 45.) When the judge asked about that element, Garcia asked that the question be repeated, and then denied any such scheme. His lawyer then recited the facts of the transaction, which Garcia acknowledged, but that statement too admitted at most that the funds would be "conceal[ed]" by being "included with the regular shipment of cargo." (Id. 47.) Garcia then acknowledged that he knew that the packages of money were wrapped so as to conceal their contents, a point his lawyer a moment earlier had appeared to deny. But while the money was not being openly displayed, the record reveals no more than that it was wrapped in *clear* plastic, put into duffel bags, and commingled with other cargo. Nothing in this colloquy bespeaks an understanding of the critical element – that the transaction be designed to conceal a listed attribute of the funds – or an admission that Garcia had such a purpose.

15

To the contrary, although Garcia acknowledged that the money was packaged to conceal what it was, he actively denied that the transaction was part of a larger scheme to conceal or disguise the source or ownership if the funds, and at no point withdrew that denial. "While a court considering a tendered guilty plea is not obliged to accept at face value every claim a defendant makes, the 'factual basis' requirement means at least that when an essential element is factually disputed, some circumstances must appear on the record to warrant a conclusion that the defendant's innocent version is unworthy of belief." Godwin, 687 F.2d at 590, quoted in large part by Adams, 448 F.3d at 501.

The government contends that the necessary additional circumstances can be found in the very use of a vast amount of cash to effect a payment for merchandise, and in the fact that Garcia understood that the money would not be reported as income. Clearly, the mere fact of transporting large amounts of cash rather than, as the government suggests, paying for drugs by check or wire, does not provide a basis to find a *purpose* to conceal. Indeed, both Cuellar and Ness involved the secretive transport of large amounts of cash. Cuellar, 128 S. Ct. at 1998 ($81,000); Ness, 565 F.3d at 76 (millions of dollars). Transferring $2.2 million in purported currency *proclaims*, rather than conceals, the illicit matter of the transaction.[5]

---

[5] It may be that under some circumstances, the use of cash in a transaction that would normally be expected to be conducted by check or a bank transfer could evidence a design to conceal the nature, source or ownership of funds. Legitimate businesses seeking to engage in illicit activity sometimes go to elaborate lengths to generate cash to use in such a manner, and we express no view about whether or when such transactions might evince the prohibited intent. In the narcotics trade, however, the business generates large sums of cash, and the central money laundering issue facing drug dealers is how to convert that cash into other forms of wealth without attracting suspicion. Under those circumstances, a drug dealer's use

16

Nor does Garcia's counsel's statement during the plea allocution – to which Garcia acceded – that the funds Garcia transported were "not to be declared or a part of any income," provide the missing link from which to deduce that the transactions were undertaken, at least in part, with a purpose to conceal a listed attribute of the funds. As the government points out, refraining from declaring unlawful proceeds as income is an effective means of concealing funds. But the purpose of failing to declare the income is beside the point. The relevant inquiry is the purpose of the financial transactions charged as the object of the conspiracy, here, the "transfer and delivery of a large amount of cash." (**A. 29**.)[6] Avoiding a paper trail, or declining to declare income, while perhaps frequently attendant to a broader purpose of concealment, no more demonstrates that the transfer and delivery were undertaken in order to conceal than does the mere fact of concealment during the transaction.

Accepting the use of cash to effect the transaction, coupled with knowledge that the cash would not be declared as income, as a sufficient factual basis for the plea would essentially turn every clandestine transaction involving unlawful proceeds into money laundering. Cuellar plainly makes such a result untenable. Cuellar, 128 S. Ct. at 2004 (rejecting construction that would make money laundering statute applicable "whenever a

---

of cash to pay his supplier cannot, standing alone, evince a design to conceal a listed attribute of the funds.

[6] The indictment did not charge, as an object of the conspiracy, violation of subsection (a)(1)(B)(ii), which prohibits certain transactions "designed in whole or in part . . . to avoid a transaction reporting requirement under State or Federal law." 18 U.S.C. § 1956(a)(1)(B)(ii).

person transported illicit funds in a secretive manner").

At bottom, the purpose of the transaction here, as in Cuellar, was merely to pay for narcotics. As a result of the past shipments, the CI owed the drug suppliers money, and Garcia's job was to retrieve this money and deliver it across the country for a fee. While this transaction was effected covertly in an effort to conceal the transaction from the authorities, there is no indication from the record that the transaction itself was an effort to conceal anything about the money. That is insufficient under Cuellar, for it evinces only how the money was moved, and does not speak to why it was moved. See Cuellar, 128 S. Ct. at 2005; Ness, 565 F.3d at 78. As the facts on the record at the time of the plea proceeding fail to satisfy the concealment element of the crime charged, Garcia's plea of guilty to the transaction money laundering conspiracy lacks a sufficient factual basis and was error.

### B. Plain Error

This finding of error, however, does not end the matter. As noted above, for this Court to correct a forfeited error, the error must also be "plain," "affect[] substantial rights," and "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." United States v. Johnson, 520 U.S. 461, 467 (1997) (internal quotation marks omitted). The government does not specifically argue that any of these elements are lacking, but rather focuses its argument on a supposed lack of error. Its arguments in that vein having been rejected, we find that the additional elements necessary for Rule 52(b) relief flow naturally under the present circumstances.

18

First, the error is "plain." In this context, "'plain' is synonymous with 'clear,' or, equivalently, 'obvious.'" Olano, 507 U.S. at 734. "Whether an error is 'plain' is determined by reference to the law as of the time of appeal." Gamez, 577 F.3d at 400, quoting United States v. Weintraub, 273 F.3d 139, 152 (2d Cir. 2001), citing in turn Johnson, 520 U.S. at 468. The law may not have been clear at the time of Garcia's plea and sentence, before Cuellar, and that lack of clarity may account for the belief of Garcia's attorney, the prosecutor, and the experienced district judge that the concealment of the funds alone supported the charge. Now, however, after Cuellar, it is eminently plain.

Second, the error affects Garcia's substantial rights. To affect substantial rights, "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 734.[7] In the context of a Rule 11 error, this standard requires "a reasonable probability that, but for the error, [the defendant] would not have entered the plea.'" Vaval, 404 F.3d at 151, quoting Dominguez Benitez, 542 U.S. at 75. Garcia argues that a plea is only measured against this standard when the challenge is to the voluntariness of the plea, and the standard is inapplicable when a

---

[7] Although the burden of establishing the elements of plain error – including prejudice – is usually on the defendant, Dominguez Benitez, 542 U.S. at 82; Olano, 507 U.S. at 734, "[w]hen the source of plain error is a supervening decision, this court has employed a modified plain error standard whereby the government bears the burden of proving that the error did not affect the defendant's substantial rights," Hardwick, 523 F.3d at 98 n.4 (internal quotation marks omitted). Whether this modified standard remains viable after Johnson remains an open question. See id. As in Hardwick, however, that question need not be resolved here because, even assuming the burden rests on defendant, we find the standard satisfied.

19

defendant challenges the factual sufficiency of a plea. He is wrong. A challenge to the factual basis of a plea is, for these purposes, equivalent to a challenge to its voluntariness. "A lack of a factual basis for a plea is a substantial defect calling into question the validity of the plea. Such defects are not technical, but are so fundamental as to cast serious doubt on the voluntariness of the plea." Adams, 448 F.3d at 502 (internal citation and quotation marks omitted), citing Godwin, 687 F.2d at 591.

That said, the plea colloquy itself suggests a reasonable probability that, had Garcia fully understood the nature of the crime he was charged with, he would not have pled guilty. During the colloquy, in the face of Garcia's protestations that he did not believe the transfer and delivery of the money to be part of any larger scheme to conceal, the court and Garcia's counsel repeatedly emphasized the physical concealment of the cash. This could reasonably have led Garcia to believe that he was guilty because of the way the money was packaged, and thereby induced his plea.

While the existence of a factual basis for the plea is determined on the basis of the record as of the plea proceeding, Adams, 448 F.3d at 500, in assessing whether the error affects substantial rights, the record as a whole becomes relevant. Vonn, 535 U.S. at 59. But here, nothing placed in the record after the plea provides any additional support for a finding that the transfer of the funds from the CI to Garcia, and Garcia's projected cross-country delivery of the money, was for the purpose of concealing the funds. Indeed, later events only underscore the conclusion that the purpose of the transaction was simply to pay for the drugs. As the CI testified at the Fatico hearing, the transaction was "a swap

20

that was actually going to happen, so I would give the money and I would get a shipment of drugs." (A. 100.)

Finally, having found plain error that affects Garcia's substantial rights, the circumstances of this case merit our discretion to order correction of the forfeited error. The Supreme Court has instructed that, though Rule 52(b) is permissive, "a plain forfeited error affecting substantial rights" should be corrected "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (internal quotation and punctuation marks omitted). That standard is amply met here: Garcia has been convicted of and is serving a 108-month sentence for an offense of which there is a substantial possibility he is not guilty. There can be no serious question that allowing this error to stand would significantly affect the fairness and integrity of judicial proceedings. As the Supreme Court clearly instructed in Olano, a "court of appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant." Id.

## CONCLUSION

For the foregoing reasons, we vacate Garcia's guilty plea and remand the case to the district court for further proceedings consistent with this opinion. Accordingly, we need not address Garcia's further arguments on appeal concerning the length of his sentence.

21