**UNITED STATES of America,**
**Appellee,**

v.

**Eugene CHUSID, Defendant–Appellant.**

**Docket No. 03–1340.**

United States Court of Appeals,
Second Circuit.

Argued:  Feb. 2, 2004.

Decided:  June 15, 2004.

---

Henry J. Steinglass, New York, N.Y. for Defendant–Appellant.

Marc A. Weinstein, Assistant U.S. Attorney, New York, N.Y. (James B, Comey, U.S. Attorney, and Celeste L. Koeleveld, Assistant U.S. Attorney, on the brief) for Appellee.

Before: POOLER, SOTOMAYOR, WESLEY, Circuit Judges.

PER CURIAM.

Defendant-appellant Eugene Chusid appeals from two decisions issued by the United States District Court for the Southern District of New York (Kaplan, J.): (1) an order, dated June 14, 2003, finding him in contempt for his failure to satisfy the district court's prior order, dated July 17, 2001, imposing restitution and fines ("the Contempt Order") and (2) an amended judgment in a criminal case, dated May 28, 2003, resentencing him pursuant to 18 U.S.C. § 3614 ("the Resentencing Order").

## BACKGROUND

On March 1, 2001 Eugene Chusid appeared before Judge Kaplan to plead guilty to: (1) wire fraud in connection with a scheme to induce an individual to transfer funds to an entity called the Carribean Bank of Commerce ("CBC"); (2) interstate transfer of two stolen checks in the amount of $1.6 million; and (3) fraudulently receiving deposits on behalf of CBC. In sum, as Judge Kaplan stated in the contempt hearing that is the subject of this appeal, Chusid was involved in a scheme that "included portraying himself as an officer of a bank, persuading people to make deposits to the bank and then diverting the proceeds."

On July 17, 2001 Judge Kaplan sentenced Chusid to a term of thirty-seven

months imprisonment and three years of supervised release. He also ordered Chusid to pay restitution in the amount of $360,000 and imposed a fine of $250,000. Chusid was obliged to pay these funds by December 1, 2001. It is undisputed that this obligation has not been met.

On December 12, 2002 the Government moved for an order to show cause as to why Chusid should not be held in contempt, or be found in criminal default, because of his delinquency, pursuant to 18 U.S.C. § 3572(i), in paying restitution and fines. The Government also requested that Chusid be resentenced pursuant to 18 U.S.C. § 3614 because of his failure to meet these obligations. Chusid opposed the order to show cause and cross-moved for, *inter alia,* an order setting aside the fine because he "was misinformed at sentencing regarding his right to appeal the fine."

Judge Kaplan issued an oral ruling on the order to show cause on May 27, 2003. He first noted that Chusid is a defendant in two federal civil actions arising out of the fraudulent scheme involving CBC. First, Chusid was sued by one of the victims of the CBC fraud in the District of New Jersey in 1999, shortly before he was indicted in the Southern District of New York. The court in that action immediately issued an order freezing certain of Chusid's assets, an order that remains in effect. Chusid's father is also a defendant in that action and, according to Chusid's present counsel, he is currently a fugitive from a court order directing him to be jailed for his failure to comply with prior orders to repatriate assets.

In 2000 the Securities and Exchange Commission filed an action against Chusid and several other defendants in the Northern District of Texas. On September 26, 2000 that court issued an order appointing a receiver, who was charged with attaching such assets of the defendants as could be located. The court stated in that order that the appointment of a receiver "is both necessary and appropriate in order to prevent waste and dissipation of assets" by the defendants.

The action of the Texas court was apparently undertaken in response to a financial transaction undertaken by Chusid some weeks earlier. Chusid was—and perhaps still is—the sole shareholder of an entity called World U.S. Financial Services, Inc. ("World US"). On September 1, 2000 Chusid made a "wire transfer request" to a bank in Luxembourg, asking it to transfer $2.76 million from a World account to an entity called Planar S.A. ("Planar"), which is incorporated in Luxembourg. The request is signed by "Eugenij Husid."

Interestingly, it appears that Planar did not exist at the time the transfer request was made. According to its incorporation papers, which are dated September 5, 2000, Planar is an entity formed to "acquire" securities, patents and licenses in order "to manage and develop them." Planar's board of directors is to be comprised of "at least three members, divided into Class A directors and Class B directors." The directors are identified as "Eugenij Husid," Grigoriy Chusid, and an individual named "Nikolay Mateev Nikolov," who is said to reside in Bulgaria. Chusid's father is named as the "day-to-day business manager of the corporation." Finally, the incorporation papers state that Planar "will be bound by the joint signature of a Class A director and a Class B director, or by the single signature of the day-to-day business manager into the limits of the daily management."

The Texas district court, in a default judgment issued on November 2, 2001, found that "World U.S. and Planar are shell companies that were used to attempt to launder the proceeds" of the frauds

undertaken by Chusid and his co-defendants. The judgment continues as follows:

All persons with notice of this Order are hereby DIRECTED to transfer to the Receiver any and all assets of World U.S. and Planar, together with copies of all records with respect to any account, transfer, operations, or activity of or relating to World U.S. and/or Planar, S.A.

It is further specifically DECLARED that the Receiver is entitled to be transferred from Planar S.A. up to $2,760.230.00 from the funds presently held by the Banque Generale du Luxembourg under the name Planar, S.A., which funds constitute Receivership Assets as that term is defined in the Order Appointing Permanent Receiver. The Court specifically finds that funds in such account were transferred on or about September 1, 2000, in violation of this Court's Order Appointing Temporary Receiver, and without consideration, from accounts held in the name of World U.S. to said account held in the name of Planar, S.A.

In his oral ruling on the order to show cause, Judge Kaplan found that, "[t]he details are not entirely before me, but it is clear that Planar continues to resist [this] attachment and to litigate the receiver's entitlement to the funds. That is true to this day." As to the original transfer request, Judge Kaplan found "that Chusid was wiring this $ 2.76 million to himself one step ahead of the sheriff, 'the sheriff' being a colloquialism for the receiver in the Texas matter."

Judge Kaplan also found that averments by Chusid to the effect that he no longer has control over the Planar funds because he was fired from the board of directors by Nickolov in 2001 are bogus because "Nickolay doesn't exist, or Nikolay is Chusid." On the contrary, "Chusid was, and in my view remains a director of Planar. The same is true of his father ....." Judge Kaplan summed up as follows:

It is clear, and I find, that Planar is resisting efforts by the receiver to regain the $2.76 million and the proceeds thereof. I find that the defendant and his father are at least two and possibly all three of the directors of Planar.

I find that the defendant has the ability to direct the payment of those funds, in the sense that he has the ability to cause Planar to cease resisting efforts by the receiver to have the money repatriated and paid over to the receiver. And I do that on two bases: First, it is the defendant's burden to prove other wise [sic], and he has not done so; second, the evidence before me in my view is sufficient to demonstrate that that finding is warranted, even if the government had the burden.

Judge Kaplan resentenced Chusid to a term of forty-one months, with a three-year term of supervised release. He also ordered Chusid

incarcerated for civil contempt until he satisfies—until he either pays over the money—that is, the $2.76 million in the Planar account—or otherwise satisfies his obligations to make restitution and pay the fine imposed by this Court; or establishes to the satisfaction of this Court that he has taken all reasonable bona fide steps available to him. He has not done so up to now.

## DISCUSSION

### I. The Contempt Order

The Contempt Order states that Chusid "be incarcerated until such time as he satisfies his obligations to make restitution and pay the fine imposed by the Court, or establishes to the satisfaction of the Court that he has taken all reasonable

bona fide steps available to him to satisfy his restitution and fine obligations." The district court's decision to impose the sanction of civil contempt "in light of properly found facts may not be overturned except for abuse of discretion." *Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir.1995).

■ Our review of the record establishes that the district court did not abuse its discretion in issuing the Contempt Order and we affirm it in full. On the contrary, the record reveals that Chusid has engaged in an extended campaign of obfuscatory and even deceptive conduct in an attempt to avoid his restitution and fine obligations. Chusid argues that, whatever his past conduct, he is presently unable to meet these obligations. It is his burden, however, "to establish his inability clearly, plainly, and unmistakably." *Id.* Because the district court did not abuse its discretion in finding that he has fallen far short of doing so, the sanction of contempt is fully warranted.

## II. The Resentencing Order

■ The Resentencing Order, *inter alia,* reimposed the district court's earlier sanction of a $250,000 fine, which Chusid does not appeal. Nevertheless, he argues that a fine in this amount constitutes an upward departure under the applicable Federal Sentencing Guidelines range, requiring the district court to set forth the reasons as to why such a sanction is warranted. He therefore asks this Court to remand the Resentencing Order, with a direction to the district court to state its reasons for an upward departure or impose a lesser fine.

According to Guidelines Section 5E1.2(c)(2), the maximum fine to which Chusid could be sentenced was set forth in the table in (c)(3). U.S. Sentencing Guidelines Manual §§ 5E1.2(c)(2), (c)(3) (2002). However, 5E1.2(c)(4) creates an exception

to 5E1.2(c)(2) by permitting the imposition of a fine in excess of the ranges prescribed in (c)(3) if "the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000 ...." *Id.* at § 5E1.2(c)(4).

Given Chusid's offense level of 20, his applicable fine range under Guidelines Section 5E1.2(c)(3) was $7,500 to $75,000. The Government argued below, however, that the statutory fine applicable to Chusid, 18 U.S.C. § 3571, falls within the Section 5E1.2(c)(4) exception. Section 3571 provides for a fine which is the greater of $250,000, or twice the resulting gross pecuniary gain to the defendant or loss to the defendant's victims. The Government, therefore, contended that the district court could impose a fine in excess of the Section 5E1.2(c)(3) range, and that the district court did not need to provide reasons for doing so because such a fine under Section 3571 would not constitute an upward departure.

In imposing a fine of $ 250,000 without stating that a fine in this amount did not constitute an upward departure, the district court apparently accepted the Government's position. The Government now asserts, however, that its position was mistaken. Specifically, the Government points to Application Note 4 to Guidelines Section 5E1.2(c)(4), which states that, where the possible maximum fine under Section 3571(d) exceeds the applicable fine range pursuant to Guidelines Sections 5E1.2(c)(2) and (c)(3), "an upward departure from the fine guideline range may be warranted." U.S.S.G § 5E1.2, Cmt. n. 4 (2002). The Government also cites authority from the Eighth and Tenth Circuits holding that Section 5E1.2(c)(4) does not apply to fines imposed under Section 3571(d). *See United States v. Sharma,* 85 F.3d 363, 365 n. 1 (8th Cir.1996); *United*

*States v. Smith,* 919 F.2d 123, 125 (10th Cir.1990).

We agree with the Government's revised position. We therefore remand the Resentencing Order to the district court for the sole purpose of allowing it to impose a fine within the range set forth by Guidelines Sections 5E1.2(c)(2) and (c)(3), or to reimpose a fine under 18 U.S.C. § 3571 with reasons justifying its decision to upwardly depart from that range.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED IN PART AND REMANDED IN PART**.