11-4440-cr
United States v. Valdez

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of May, two thousand thirteen.

PRESENT: CHESTER J. STRAUB,
REENA RAGGI,
*Circuit Judges*,
BRIAN M. COGAN,
*District Judge*.[*]

------------------------------------------------------------------------------------

UNITED STATES OF AMERICA,
*Appellee*,

v. No. 11-4440-cr

RAFAEL MERCEDES VALDEZ,
*Defendant-Appellant*.

------------------------------------------------------------------------------------

APPEARING FOR APPELLANT: MARSHALL A. MINTZ, Mintz & Oppenheim LLP, New York, New York.

APPEARING FOR APPELLEE: RANDALL W. JACKSON (Jennifer G. Rodgers, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

------

[*] The Honorable Brian M. Cogan, of the United States District Court for the Eastern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on August 25, 2011, is AFFIRMED.

Rafael Mercedes Valdez appeals his conviction, following a guilty plea, for money laundering conspiracy, see 18 U.S.C. § 1956(a)(1)(B)(i), (h), based on purported error in (1) the acceptance of his guilty plea, (2) the denial of a motion to withdraw his guilty plea, (3) the imposition of a 20-year prison sentence and a $10 million fine, and (4) the entry of a $2 billion forfeiture order. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Adequate Factual Basis for Guilty Plea

Valdez contends that the district court should not have accepted his guilty plea because there was insufficient record evidence to show that he acted with the requisite intent to conceal the nature, location, source, ownership, or control of narcotics proceeds. See 18 U.S.C. § 1956(a)(1)(B)(i). Because Valdez failed to raise this objection before the district court, we review only for plain error. See United States v. Marcus, 130 S. Ct. 2159, 2164 (2010) (stating that plain error exists where (1) there is error; (2) that is clear or obvious; (3) affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings). We conclude that the district court did not commit error, let alone plain error.

"Before entering judgment on a guilty plea," a district court "must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[N]o specific dialogue" is required for this determination. United States v. Andrades, 169 F.3d 131, 136 (2d Cir. 1999). Rather, the court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." United States v. Garcia, 587 F.3d 509, 514 (2d Cir. 2009) (internal quotation marks omitted). In so doing, the court "is not limited to an examination of the defendant's plea allocution, but may look more broadly to any facts on the record at the time of the plea proceeding." Id. (internal quotation marks omitted).

At his plea allocution, Valdez admitted that, in exchange for a percentage of each successful transaction, he transferred millions of dollars in narcotics proceeds from the Dominican Republic through international banks, including banks in the United States and China, to drug traffickers in Central and South America. He also admitted to orchestrating bulk cash transfers of narcotics proceeds in New York City and Miami involving a total of approximately $10 million. Further, the government proffered that, at trial, it would have offered cooperating witnesses' testimony and Valdez's recorded phone conversations proving the money laundering conspiracy's international activities. From this evidence of Valdez's participation in a massive, diverse, and transnational money laundering scheme, the district court could reasonably infer that Valdez acted with the requisite intent to conceal the nature, location, source, ownership, or control of the narcotics proceeds. See Cuellar v. United

3

States, 553 U.S. 550, 567 n.8 (2008) (stating that circumstantial evidence may establish requisite intent to conceal); United States v. Huezo, 546 F.3d 174, 182 (2d Cir. 2008) (holding that "common sense and experience" supported inference that defendant acted with requisite intent to conceal when he participated in large-scale, complex money laundering conspiracy). Thus, there was an adequate factual basis in the record at the time Valdez entered his plea to establish that he acted with the requisite intent.

Even if we were to identify any inadequacy in the factual record existing at the time of Valdez's plea, we would necessarily evaluate the entire record in assessing the likely effect of a Rule 11 error. See United States v. Garcia, 587 F.3d at 515. At an evidentiary hearing subsequent to Valdez's guilty plea, a federal agent testified to Valdez's admissions that he (1) had expertise in money laundering, (2) had laundered approximately $900 million through one United States bank alone in 2006, (3) had laundered approximately $2 billion over the course of 20 years, and (4) had utilized four different methods to launder narcotics proceeds, in particular, electronic fund transfers, bulk currency transports, purchase and then sale of vehicles, and deposits into and withdrawals from checking accounts under various names at United States banks. In light of this testimony, which the district court found "wholly credible," Tr. 93:22, J.A. 261, Valdez cannot show a "reasonable probability" that, but for the purported error in the plea allocution, "he would not have entered the plea," United States v. Garcia, 587 F.3d at 515 (internal quotation marks omitted). Nor can he show that allowing this purported error to stand would "significantly affect the fairness and

4

integrity of judicial proceedings." Id. at 521.[1]

Accordingly, we reject Valdez's challenge to the factual basis for his guilty plea.[2]

---

[1] Valdez's reliance on Garcia is misplaced. There, we held that, "[a]t bottom, the purpose of the transactions . . ., as in Cuellar, was merely to pay for narcotics." United States v. Garcia, 587 F.3d at 519. The record here contains sufficient circumstantial evidence to show that the purpose of Valdez's transactions went beyond paying for narcotics to reach concealment of the nature, location, source, ownership, or control of the proceeds of narcotics trafficking. See 18 U.S.C. § 1956(a)(1)(B)(i). Moreover, in Garcia, the record of the plea proceeding reflected the defendant's "actual confusion about the critical concealment element of the offense" and his denial "that the transaction was part of a larger scheme to conceal or disguise the source or ownership [o]f the funds." Id. at 518. The record in this case presents no such concerns. To the contrary, Valdez acknowledged receiving the indictment and reviewing it "in detail" with his attorney. Tr. 15:16, J.A. 26. Then, following a discussion of the elements of the offense, including the requisite intent to conceal, Valdez's conduct, and the government's evidence, which Valdez did not dispute, Valdez stated: "I plead guilty because in fact I am guilty." Tr. 37:11–12, J.A. 32.

Valdez's reliance on Ness is likewise inapposite. In Ness, we held that, under Cuellar, evidence of highly complex and surreptitious efforts to conceal money for transport was insufficient to establish intent to conceal pursuant to § 1956(a)(1)(B)(i). See United States v. Ness, 565 F.3d 73, 76–78 (2d Cir. 2009). Here, however, quite apart from any evidence of Valdez's efforts to conceal money for transport, there is sufficient circumstantial evidence to establish that he acted with the requisite intent to conceal the money's link to narcotics trafficking.

[2] In his pro se supplemental brief, Valdez argues that his admissions to the federal agents were involuntary and thus inadmissible. Valdez has offered no evidence to suggest that his statements were coerced, and we identify no error of law or fact in the district court's rejection of this argument. See United States v. Maldonado-Rivera, 922 F.2d 934, 972 (2d Cir. 1990) (reviewing findings of fact underlying voluntariness determination for clear error).

In light of our holding that an adequate factual basis supported Valdez's guilty plea, we reject his pro se claim of actual innocence as meritless. Further, his invocation of the rule of lenity is inapt because that rule applies only in cases where a court construes an ambiguous criminal statute, which we do not do here. See Moskal v. United States, 498 U.S. 103, 107–08 (1990).

2.      Motion To Withdraw Guilty Plea

We review Valdez's pro se challenge to the denial of his motion to withdraw his guilty plea for abuse of discretion, see United States v. Schmidt, 373 F.3d 100, 102 (2d Cir. 2004), and we find no such abuse here.

A defendant may withdraw his guilty plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In applying this standard, a district court considers (1) whether defendant has asserted legal innocence in his motion to withdraw; (2) the amount of time between the plea and the motion, mindful that the longer the elapsed time, the less likely it is that withdrawal would be fair and just; and (3) whether the government would be prejudiced by withdrawal. See United States v. Schmidt, 373 F.3d at 102–03.

Here, Valdez's conclusory assertions of legal innocence are insufficient to support his motion to withdraw his guilty plea. See United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001) (stating that claim of innocence "must be supported by evidence"); cf. United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997) (reiterating that defendant's "self-inculpatory statements . . . made under oath at his plea allocution carry a strong presumption of verity" (internal quotation marks omitted)). Indeed, although his motion was nominally grounded in a claim of innocence, Valdez's arguments to the district court (like his pro se brief on appeal) primarily took issue with the amount of funds attributed to his conduct and the resulting sentence. Valdez's "reevaluation of either the Government's case against him or

6

the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea."

United States v. Schmidt, 373 F.3d at 102 (internal quotation marks omitted). Moreover, Valdez's more than 18-month delay in moving to withdraw his guilty plea in the district court weighed heavily against granting his motion. See id. Under these circumstances, the district court acted well within its discretion in denying Valdez's motion to withdraw his guilty plea.[3]

3.      Procedural Unreasonableness of Sentence

Valdez asserts that the 20-year prison sentence and $10 million fine in his case are infected by procedural error in the application of relevant Guidelines and, in the case of the fine, a failure to make requisite findings pursuant to 18 U.S.C. §§ 3553(a) and 3571–72. See United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (stating that district court commits procedural error, inter alia, where it miscalculates Guidelines, does not consider § 3553(a) factors, or rests sentence on clearly erroneous finding of fact). Because Valdez failed to preserve these objections before the district court, we review for plain error,

---

[3] Equally meritless is Valdez's pro se argument that, at the plea allocution, the district court indicated that Valdez could withdraw his guilty plea up until his sentencing, when it stated: "[W]hatever sentence I impose, no matter how unhappy you may be with it, at that point it will be too late for you to withdraw your guilty plea and go to trial." Tr. 24:25–25:2, J.A. 28–29 (emphasis added). This statement does not indicate that Valdez would be free to withdraw his guilty plea at any time prior to sentencing, but only that he would be unable to withdraw his plea at sentencing if he was dissatisfied with the sentence imposed.

Insofar as Valdez argues that the district court did not afford him an adequate opportunity to present his motion to withdraw, the record belies this claim, showing that the district court reviewed and considered Valdez's motion papers and gave him an opportunity to be heard on that motion.

*see* United States v. Dorvee, 616 F.3d 174, 179 (2d Cir. 2010); United States v. Pfaff, 619 F.3d 172, 174 (2d Cir. 2010), which we do not identify here.

a.    Guidelines Sentencing Range

Valdez submits that the district court erred in calculating his applicable Guidelines range as life imprisonment, rather than the 20-year maximum provided by § 1956(a)(1)(B)(i). Section 5G1.1(a) of the Guidelines addresses how a statutory maximum below the applicable Guidelines range affects calculation of that range: "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."  Here, the district court's Statement of Reasons for Valdez's sentence indicates that it calculated the "applicable guidelines range" by adding together the base offense level and the pertinent enhancements, which yielded a "guidelines range of life imprisonment," and it then "reduced" that range to "20 years due to the statutory maximum term of imprisonment (§ 5G1.1(a))." S.A. 11. Thus, the district court correctly calculated the applicable Guidelines range in accordance with § 5G1.1(a).  See United States v. Dorvee, 616 F.3d at 180–81.

No contrary conclusion can be drawn from statements—highlighted by Valdez—in which the district court referred to the Guidelines range as "life imprisonment," Tr. 111:17, J.A. 265, and indicated that the Guidelines "are beyond the statutory maximum," Tr. 112:16, JA 265.  These statements occurred before the district court applied § 5G1.1(a) in its Guidelines calculations, when it was determining whether application of that section was

8

unnecessary. See, e.g., JA 265, Tr. 111:19–22 ("Even if I were to credit every argument that's been made by or on behalf of . . . Valdez with respect to sentencing guidelines, he would still be in a range that is beyond the statutory maximum."). Nor does the fact that the court entered "life to life" rather than "20 years" as the Guidelines "Imprisonment Range" on the Statement of Reasons show a plain error in procedure, in light of the district court's subsequent detailed explanation of its calculation of the Guidelines, which makes clear that it understood the initial Guidelines calculation to be superseded by the lesser statutory maximum pursuant to § 5G1.1(a).

    b.    $10 Million Fine

Section 5E1.2(c)(3) of the Guidelines sets forth the maximum fines that correspond to various Guidelines offense levels. Section 5E1.2(c)(4), however, states that the maximums do "not apply if the defendant is convicted under a statute authorizing . . . a maximum fine greater than $250,000"; rather, "[i]n such cases, the court may impose a fine up to the maximum authorized by the statute." Valdez was convicted of conspiring to violate § 1956(a)(1)(B)(i), which authorizes "a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater." After noting that Valdez had admitted to laundering more than $2 billion, the Pre-Sentence Investigation Report ("PSR") stated that "the value of the laundered funds reasonably foreseeable to [Valdez] was more than $400 [million]." PSR ¶ 38. Thus, it recommended a maximum fine under the Guidelines of "at least" $800 million. Id. at ¶ 92. The district court adopted that amount as the maximum Guidelines fine in its Statement of Reasons.

9

In arguing that this was error, Valdez first claims that the maximum fine for his offense is $250,000, as set forth in § 5E1.2(c)(3). He therefore asserts that the district court's imposition of a $10 million fine constituted an upward departure from the Guidelines, requiring advance notice under Fed. R. Crim. P. 32(h). This misreads the Guidelines, which distinguish between cases in which an upward departure may be warranted from the maximum fine set forth in § 5E1.2(c)(3), see U.S.S.G. § 5E1.2 cmt. n.4, and cases in which the § 5E1.2(c)(3) maximum fine does not apply, see id. § 5E1.2 cmt. n.5. Where, as here, a defendant is convicted under a statute containing a "special provision[] permitting larger fines" than those set forth in § 5E1.2(c)(3), "the guidelines do not limit [the] maximum fine[]." Id. The district court thus did not err in concluding that the maximum fine listed in § 5E1.2(c)(3) did not apply here, and it did not upwardly depart in imposing a fine above that amount so as to require notice.[4]

Valdez claims that, even if the § 5E1.2(c)(3) maximums do not control here, the maximum Guidelines fine in his case is $20 million, not $800 million, because he admitted to laundering only $10 million during his plea allocution and only facts so admitted can support the maximum fine determination in this case. See Southern Union Co. v. United

_____

[4] United States v. Chusid, 372 F.3d 113 (2d Cir. 2004), cited by Valdez, is not to the contrary. That case holds that the limits set forth in § 5E1.2(c)(3) apply to fines imposed under 18 U.S.C. § 3571(d) and thus a fine under that statute in excess of those maximums constitutes an upward departure. See 372 F.3d at 117–18. Chusid has no bearing on fines imposed pursuant to § 1956(a). See U.S.S.G. § 5E1.2 cmt. n.5 (stating that Guidelines do not limit maximum fines imposed under § 1956(a)).

States, 132 S. Ct. 2344, 2350–51 (2012) (holding that facts determining fine's statutory maximum amount must be found by jury or admitted by defendant); see also United States v. Pfaff, 619 F.3d 172, 174–75 (2d Cir. 2010). Even assuming under these precedents that Valdez satisfies the first two prongs of plain error in challenging the calculation of $800 million as the maximum fine, he cannot satisfy the final two criteria in challenging the $10 million fine imposed. That fine is half of the $20 million maximum that Valdez argues should have been identified. Nothing in the record indicates that the district court would have imposed a lesser fine in this case had it adopted Valdez's asserted maximum fine. Indeed, it appears that the district court intended to fine Valdez the approximate amount he admitted to laundering at his plea allocution. In these circumstances, Valdez cannot show that any error in calculating the maximum fine affected "substantial rights" or "seriously affected the fairness of the proceedings." Cf. United States v. Pfaff, 619 F.3d at 175 (identifying plain error where district court imposed fine twice as large as Guidelines permitted).

Valdez's argument that the district court failed to justify the $10 million fine by making the requisite findings pursuant to 18 U.S.C. §§ 3553(a) and 3571–72 is meritless. "[W]e presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged [his] duty to consider the statutory factors." United States v. Fernandez, 443 F.3d 19, 30 (2d Cir. 2006). The record here contains no such contrary evidence. Quite the opposite, it shows that the court examined many of those factors at

11

length before imposing the fine, including the lucrative money laundering conspiracy in which Valdez engaged and his ability quickly to pay a substantial ransom to drug dealers who had kidnapped him.  See United States v. Fields, 113 F.3d 313, 325 (2d Cir. 1997) (holding that "[e]vidence of lucrative illegal activity" can support judge's finding that defendant has sufficient funds to pay fine).

Moreover, while the PSR concluded, based on a financial statement completed by Valdez, that Valdez lacked the ability to pay a fine and that the fine therefore should be waived, the district court was not required uncritically to accept his representation that he had no assets.  See United States v. Sasso, 59 F.3d 341, 352 (2d Cir. 1995).  Nor was the fact that Valdez had been appointed counsel as an indigent defendant determinative of his ability to pay a fine.  See United States v. Salameh, 261 F.3d 271, 276 (2d Cir. 2001).  Valdez admitted at his sentencing that he received a percentage of the funds that he laundered, and the district court heard testimony that Valdez admitted to laundering as much as $2 billion over 20 years.  The circumstantial evidence therefore provided adequate support for the district court's conclusion that Valdez had sufficient assets in the Dominican Republic to pay the $10 million fine.  See United States v. Fields, 113 F.3d at 325.

Accordingly, the district court did not plainly err in imposing the challenged fine.[5]

_____

[5] Valdez's reliance on United States v. Elfgeeh, 515 F.3d 100 (2d Cir. 2008), is misplaced.  There, we identified plain error in part because the district court imposed a fine without advance notice and without affording defendant an opportunity to demonstrate his inability to pay the fine.  See id. at 137.  Here, despite Valdez's assertions to the contrary, the PSR shows that he was provided notice of a possible $800 million fine and "given at least a minimal opportunity to show that he lack[ed] the ability to pay the fine proposed by the court."  Id.

4.      Forfeiture

On Valdez's preserved challenge to the $2 billion forfeiture order, we review the district court's legal conclusions de novo and its factual findings for clear error. See United States v. Castello, 611 F.3d 116, 119 (2d Cir. 2010). We identify no error in the conclusion that $2 billion was subject to forfeiture under 18 U.S.C. § 981(a)(1)(A). Although Valdez argued that he had not admitted to laundering $2 billion, the district court was entitled to credit the federal agent's testimony as to this admission. That testimony was sufficient to establish by a preponderance of the evidence, see United States v. Burden, 600 F.3d 204, 226 (2d Cir. 2010), that the $2 billion had the "'requisite nexus'" to Valdez's money laundering conspiracy to be subject to forfeiture, United States v. Capoccia, 503 F.3d 103, 118 (2d Cir. 2007) (quoting Fed. R. Crim. P. 32.2(b)(1)).

We have considered Valdez's remaining arguments on appeal and conclude that they are without merit. The judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court